UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TRUSTEES OF THE PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND, et al., <br>     Plaintiffs, <br><br> v. <br><br> ALLAN BRUNATTI, et al. <br><br>     Defendants. | ) ) ) ) ) ) ) Case No. 1:10-cv-00992 (AJT/IDD) ) ) ) ) ) ) |

### REPORT AND RECOMMENDATION

This matter is before the Court on The Trustees of the Plumbers and Pipefitters National Pension Fund ("NPF") and the Trustees of the International Training Fund ("ITF") (collectively referred to as "Plaintiffs") Motion for Default Judgment against Allan Brunatti ("Mr. Brunatti"), individually, and against Marco R. Brunatti Associates, which is also known as M.R. Brunatti Associates ("Defendants"), pursuant to Federal Rule of Civil Procedure 55 (b)(2). (Dkt. No. 15.) After a representative for Defendants failed to appear at the hearing on February 25, 2011, the undersigned Magistrate Judge took this matter under advisement. Upon consideration of the Complaint, Plaintiffs' Motion for Default Judgment, and the supporting affidavits, the undersigned Magistrate Judge makes the following findings and recommends that default judgment be entered against the Defendants.

1

## I. INTRODUCTION

On August 31, 2010, Plaintiffs filed this action under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132 and 1145, and under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). (Compl. ¶ 7; Pls.' Mot. Default J. at 1.) These Acts allow parties to enforce provisions of their collective bargaining agreements. In filing their Complaint, Plaintiffs seek unpaid contributions, interest on the unpaid contributions, liquidated damages, injunctive relief,[1] and attorneys' fees and costs, pursuant to ERISA, LMRA, and the collective bargaining agreement and trust agreements executed by the United Association Local Union No. 140 ("Local Union") and the Defendants. (Compl. ¶ 8.)

### A. Jurisdiction and Venue

This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. §§ 185(a), 1132 and 1145 because the funds are administered from the Plaintiffs' principal place of business in Alexandria, Virginia. (Compl. ¶¶ 1, 2.) Where an action is brought in a district court of the United States under Sections 502 and 515 of ERISA, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found. 29 U.S.C. § 1132(e)(2). Moreover, "a suit for violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce, may be brought in any district

---

[1] In Count III of the Complaint, Plaintiffs seek an order enjoining the violations of the terms of the employee benefit plans and requiring Defendant to submit timely contributions and remittance reports to each plaintiff. Plaintiffs have not pursued their request for injunctive relief in their Motion for Default Judgment.

2

court having jurisdiction over the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

This Court has personal jurisdiction over the Defendants under the decision in *Board of Trustees, Sheet Metal Workers Nat'l Pens. Fund v. McD Metals, Inc.*, 964 F. Supp. 1040, 1045 (E.D. Va. 1997).[2] Additionally, this Court has personal jurisdiction over the Defendants pursuant to Section 502 of ERISA, 29 U.S.C. §§ 1132(e)(2) and Section 301(c) of the LMRA, 29 U.S.C. § 185(c). (Compl. ¶ 7.) Venue is also properly situated in this District because the breach of the collective bargaining agreements and consequential breach of Section 515 of ERISA, 29 U.S.C. § 1145, occurred within this district. (Compl. ¶¶ 1, 2.)

### B. Service of Process

Under 29 U.S.C. § 1132(e)(2), service of process is proper in any district where a defendant resides or may be found. When a plaintiff fails to serve the defendant properly under federal or state law, a court lacks personal jurisdiction over the defendant and may not enter default judgment against him *Omni Capital Int'l, Ltd. v. Wolff & Co.*, 484 U.S. 97, 104 (1987), *superseded by statute on other grounds*, Fed. R. Civ. P. 4(k), (stating that "[s]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served."(quoting *Mississippi Publ'g Corp. v. Murphee*, 326 U.S. 438, 444-45 (1946))); *Cent. Operating Co. v. Util. Workers of Am.*, 491 F.2d 245, 249 (4th Cir. 1974) (reversing lower court's decision to enter default judgment against a non-resident defendant union

---

[2] The Court held that the Eastern District of Virginia had personal jurisdiction over defendant, a New York corporation, because ERISA provided for nationwide service of process, and thus, the Fifth Amendment "national" contract theory is applicable, and the Virginia long-arm statute under Virginia Code § 8.01-328.1 is inapplicable.

3

because the court lacked personal jurisdiction where the plaintiff failed to effectively serve the union with summons and complaint).

Although § 1132(e) states where a defendant may be served, the Federal Rules of Civil Procedure ("FRCP") provide the manner in which service must occur. Under Rule 4(h), service upon a corporation, partnership, or other unincorporated association shall be effectuated "in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. . . ." Fed. R. Civ. P. 4(h). Individuals are properly served under subsection (e)(2) by delivering to the person a copy of the summons and the complaint. *Id.* at 4(e)(2).

On October 28, 2010, Mr. Brunatti accepted service of the Summons and Complaint on his own behalf and as the owner of Marco R. Brunatti Associates also known as M.R. Brunatti Associates. (Dkt. Nos. 5, 6.) Therefore, Plaintiffs properly served Defendants pursuant to 29 U.S.C. § 1132(e)(2) and FRCP 4(h).

### C. Grounds for Default

As previously stated, Plaintiffs filed their Complaint on August 31, 2010. (Dkt. No. 1.) Defendants have failed to appear, answer, or file any other responsive pleadings in this matter. On January 31, 2011, Plaintiffs filed a Request for Entry of Default with the Clerk. (Dkt. No. 8.) On February 1, 2011, the Clerk entered default against the Defendants. (Dkt. No. 9.) On February 16, 2011, the Plaintiffs filed a Motion for Default Judgment and a hearing on the matter was conducted on February 25, 2011. (Dkt. Nos. 15, 18.) After the Defendants failed to appear at the February 25, 2011

4

hearing, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation.

## II. FACTUAL FINDINGS

The undersigned Magistrate Judge makes the following findings of fact based on the Complaint; the Motion for Default Judgment and memorandum in support thereof; the Affidavits by William T. Sweeney Jr., the Administrator of the NPF ("Sweeney NPF Aff."), who is also authorized to execute an affidavit on behalf of the International Training Fund ("Sweeney ITF Aff."); the Declaration of John R. Harney, Plaintiffs' counsel ("Harney Decl."); and the documents submitted in proof of damages.

The Plaintiffs are the trustees of multiemployer employee benefit plans[3] administered from offices located in Alexandria, Virginia. (Compl. ¶¶ 1, 2.) Both the National Pension Fund ("NPF") and the International Training Fund ("ITF") are established and maintained by a Restated Agreement and Declaration of Trust and by a Collective Bargaining Agreement executed by the Local Union No. 140 and the Defendants. (Compl. ¶¶ 1, 2.) Mr. Brunatti resides in Utah and conducts business from an office in the state under the name Marco R. Brunatti Associates, also known as M.R. Brunatti Associates ("M.R. Associates"). (Compl. ¶ 3.) Mr. Brunatti is the owner of M.R. Associates and is an "employer in an industry affecting commerce," as defined by 29 U.S.C. §§ 1002(5), (9), (11), (12), and (14); 29 U.S.C. §§ 142(1), (3), and 152(2); and 29 U.S.C. § 1001(a). (Compl. ¶¶ 3, 4, 5.)

M.R. Associates is a business organized under the laws of Utah, however, its corporate status in the state expired in 2009 due to a failure to file for renewal. (Compl. ¶

---

[3] Such plans are defined by ERISA, 29 U.S.C. §§ 1002(3) and 1002(37).

6.) Nevertheless, Plaintiffs allege, and by failing to answer Defendants admit,[4] that Defendants employed certain employees under the Collective Bargaining Agreement during the period alleged by the Plaintiffs. (Compl. ¶ 11; Sweeny ITF Aff. ¶ 4; Sweeny NPF Aff. ¶ 4)

Defendants are members of the Utah Mechanical Contractors Association, a membership which binds them to a Collective Bargaining Agreement with Local Union No. 140. (Compl. ¶ 8.) Pursuant to the Collective Bargaining Agreement, Defendants agreed to pay the NPF certain sums of money for each hour worked by employees of Defendants covered by the Collective Bargaining Agreement. (Compl. ¶ 9.) Plaintiffs claim that Defendants employed certain employees covered under the Collective Bargaining Agreement and failed to make proper contributions to the NPF (Count I), and the International Training Fund (Count II) for work performed at Defendants' request. (Compl. ¶¶ 12, 13, 23, 24.)

### A. Count I – National Pension Fund

The NPF asserts that, pursuant to the reports submitted by Defendants, the Defendants failed to make contributions to the NPF for the months of September 2009 through July 2010. (Compl. ¶¶ 12, 13; Sweeney NPF Aff. ¶¶ 6.) Additionally, Defendants have failed to submit reports to the NPF indicating the amounts Defendants owe for the period of September 2009 through July 2010. (Compl. ¶ 14; Sweeney NPF Aff. ¶ 7.)

---

[4] Fed R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts alleged state a claim.")

When an employer fails to file the properly completed forms, Article VI, Section 6, of the Restated Agreement and Declaration of Trust provides that the fund is authorized to project the delinquent amount in the following manner: either by taking the greater of the average of the monthly payments actually made by the Employer for the last three (3) months for which payments were made or by taking the average of the monthly payments made by the Employer for the last twelve (12) months for which payments were made. (Compl. ¶ 16.) Based on the report forms submitted for the last three months for which Defendants actually made contributions to the NPF, the Defendants' projected payment delinquency for September 2009 through July 2010 is $30,622.50.[5] (Compl. ¶ 19; Sweeney NPF Aff. ¶ 12.)

The NPF further alleges that Defendants are bound to make payments under Article VI, Section 5, of the Restated Agreement and Declaration of Trust, which provides that an employer who fails to timely pay the amounts required by the Collective Bargaining Agreement shall be considered delinquent and may be assessed liquidated damages in the amount of ten percent (10%) of the amount due. (Comp. ¶ 20.) Pursuant to this provision, the NPF claims that it is owed liquidated damages in the amount of $3,062.25 for the months of September 2009 through July 2010. (Compl. ¶ 21; Sweeney NPF Aff. ¶ 14.)

In addition, the Restated Agreement and Declaration of Trust allows interest on any amounts owed to the NPF at the rate of twelve percent (12%) per annum continuing to accrue from the due date through the date of payment. (Sweeney NPF Aff. ¶ 14.) The

---

[5] The breakdown in the Complaint shows that based on the reports submitted for the last three months for which Defendants submitted the reports, the monthly contribution is projected to be $2,940.75. (Compl. ¶ 18.) When you multiply this projected monthly contribution by eleven (11), for each month during the period of September 2009 through July 2010, the projected delinquency totals $32,348.25. However, the Plaintiffs assert in the Complaint that Defendants owe contributions in the amount of only $30,622.50. (Compl. ¶ 19).

7

NPF fund alleges that Defendants owe interest on the delinquent contributions in the amount of $3,369.90, calculated until February 25, 2011 or date of payment. (Sweeney NPF Aff. ¶ 14.)

Therefore, the Defendant owes the NPF a total of $34,354.65 in the following amounts: $30,622.50 in contributions for the months of September 2009 through July 2010; $3,062 in liquidated damages for the same period; and $3,369.90 in interest accruing from the date due through the date of payment or February 25, 2011. (*See* Sweeney NPF Aff. ¶ 15; Sweeney NPF Aff. App.)

### B. Count II – International Training Fund

Defendants failed to make contributions due to the ITF for the period of September 2009 through April 2010, pursuant to remittance reports submitted by Defendants for that time period. (Compl. ¶ 23; Sweeny ITF Aff. ¶ 6.) Defendants also failed to submit reports to the ITF indicating the amount of contributions owed for the months of May 2010 through July 2010 and failed to make contributions for those months as well. (Compl. ¶ 25; Sweeney ITF Aff. ¶¶ 5, 7.)

When an employer fails to file properly completed report forms, Article VI, Section 7, of the Restated Trust Agreement provides that the ITF is authorized to calculate delinquent contributions by either using the greater of the average of the monthly payments actually made by the Employer for the last three (3) months for which payments or reports were submitted, or by taking the average of the monthly payments or reports submitted by the Employer for the last twelve (12) months for which payments or reports were submitted. (Compl. ¶ 26.)

Plaintiffs assert that for the period of September 2009 through April 2010, Defendants owe the ITF contributions in the amount of $968.90. (Compl. ¶ 24.) They further assert that based on the report forms submitted for the last three months for which Defendants actually made contributions to the ITF, the projected delinquency for September 2009 through July 2010 is $1,361.00. (Compl. ¶¶ 29, 30; Sweeney ITF Aff. ¶ 10.)

The ITF also contends that pursuant to Article VI, Section 6, of the Restated Trust Agreement, if an employer fails to file a report or make contributions within ten (10) calendar days of the due date, the Trustees have the discretion to obtain liquidated damages in the amount of twenty percent (20%) of the amount due for each overdue monthly payment. (Compl. ¶ 31.) Pursuant to this provision, the Complaint alleges that the Defendants owe the ITF $272.20 in liquidated damages for the period of September 2009 through July 2010. (Compl. ¶ 27.)

In addition, the Restated Trust Agreement authorizes interest to accrue at a rate of twelve percent (12%) per annum from the due date to the date of payment. (Compl. ¶ 31; Sweeney ITF Aff. ¶ 14.) The ITF asserts that the Defendants owe interest on the delinquent contributions in the total amount of $149.77 from that date due through payment or February 22, 2011.

Consequently, the Defendants owe the ITF a total of $1,782.97 in the following amounts: $1,361.00 in delinquent contributions for the months of September 2009 through July 2010; $272.20 in liquidated damages for the late payments for the months of September 2009 through July 2010; and $149.77 in interest until February 25, 2011, and

9

continuing to accrue until the date of full payment. (Sweeney ITF Aff. ¶ 16; Sweeney ITF Aff. App.)

Pursuant to the Agreements and under Section 502(g)(2) of ERISA, Plaintiffs are entitled to recover: (1) the full amount of unpaid contributions; (2) interest on contributions which were paid late or remain unpaid; (3) liquidated damages for contributions which were paid late or remain unpaid; and (4) reasonable attorneys' fees and the costs of this action. The amounts due in unpaid and delinquent monthly contributions, liquidated damages on unpaid and delinquent contributions, and accrued interest on unpaid and delinquent contributions calculated through February 25, 2011, are summarized as follows:

| *Plaintiff* | *Delinquent Contributions* | *Liquidated Damages* | *Interest through 02/25/11* | *Total* |
|---|---|---|---|---|
| National Pension Fund | $30,622.50 | $3,062 | $3,369.90 | $34,354.65 |
| International Training Fund | $1,361.00 | $272.20 | $149.77 | $1,782.97 |

(Sweeney NPF Aff. App.; Sweeney ITF Aff. App.)

### C. Attorneys' Fees and Costs

Finally, Plaintiffs seek $1,701.29 in attorneys' fees and costs ($1,100.00 in attorneys' fees and $601.29 in costs). In support of this request, Plaintiffs submitted the Declaration of John R. Harney and a report of attorneys' fees and costs through February 15, 2011. (Harney Decl. ¶ 7; Harney Decl. App.) The undersigned Magistrate Judge finds the following costs and attorneys' fees to be reasonable.

| Attorneys' Fees | Costs |
|---|---|
| $1,100.00 | $601.29 |

(Harney Decl. ¶ 7.)

### III. RECOMMENDATION

The undersigned Magistrate Judge recommends entry of default judgment in favor of the Trustees of the Plumbers and Pipefitters National Pension Fund and the International Training Fund and against Defendants, Allan Brunatti, individually and doing business as Marco R. Brunatti Associates, which is also known as M.R. Brunatti Associates and against Marco. R. Brunatti Associates, also known as M.R. Burnatti Associates.

The National Pension Fund is entitled to recover damages in the following amounts: $30,622.50 in contributions for the months of September 2009 through July 2010; $3,062 in liquidated damages for the same period; and $3,369.90 in interest accruing from the date due through the date of payment or February 25, 2011. Thus, the recommended total damages award for the National Pension Fund is $34,354.65.

The International Training Fund is entitled to recover damages in the following amounts: 1,361.00 in delinquent contributions for the months of September 2009 through July 2010; $272.20 in liquidated damages for the late payments for the months of September 2009 through July 2010; and $149.77 in interest until February 25, 2011, and continuing to accrue until the date of full payment. Thus, the recommended total damages awards for the International Training Fund is 1,782.97.

Plaintiffs are also entitled to recover their attorneys' fees and costs in the amount of $1,701.29 in attorneys' fees and costs ($1,100.00 in attorneys' fees and $601.29 in

costs). If further action is required to enforce and collect this judgment, Plaintiffs may apply to this Court or to the court in which enforcement is sought for further appropriate injunctive relief in addition to the relief set out in this Report and Recommendation.

##      IV.    NOTICE

**By mailing copies of this report and recommendation, the parties are notified that objections to this report and recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this report and recommendation. A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to Defendants at the following address:

    Allan Brunatti
    d/b/a Marco R. Brunatti Associates a/k/a M.R. Brunatti Associates
    526 East 12100 South
    Draper, UT 84020

    Marco R. Brunatti Associates a/k/a M.R. Brunatti Associates
    526 East 12100 South
    Draper, UT 84020

                                                        /s/
                                                   Ivan D. Davis
                                                   United States Magistrate Judge

August 26, 2011
Alexandria, Virginia